IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 3:14-23 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| JOSEPH D. MAURIZIO, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**I.     Introduction**

Before the Court in this matter is Defendant's motion (ECF No. 98) to exclude the expert testimony of Dr. Veronique Valliere. The parties submitted briefing on the issue (ECF Nos. 98, 100, 101), and the Court held a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (U.S. 1993)/Rule 702 hearing on September 3, 2015. For the reasons that follow, the Court will deny Defendant's motion (ECF No. 98).

**II.    Background**

On September 25, 2014, a criminal complaint (ECF No. 1) was filed against Defendant Joseph D. Maurizio, Jr., charging him with engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c), and with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4). On October 7, 2014, the grand jury issued a two-count indictment (ECF No. 16), charging Defendant at Count One with engaging in illicit sexual conduct with a minor in foreign places, in violation of 18 U.S.C. § 2423(c), and at Count Two with possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. 2252(a)(4)(B).

On April 7, 2015, the grand jury issued an eight-count superseding Indictment (ECF No. 69), charging Defendant at Count One with engaging in illicit sexual conduct with a minor in foreign places, in violation of 18 U.S.C. § 2423(c), at Count Two with possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. 2252(a)(4)(B), at Counts Three through Five with engaging in illicit sexual conduct in foreign places, in violation of 18 U.S.C. § 2423(c), and at Counts Six through Eight with the transporting, transmitting, or transferring of funds or monetary instruments into or out of the United States with the intent to promote carrying on of a specified unlawful activity, in violation of 19 U.S.C. § 1956(a)(2)(A). Trial in this matter is currently scheduled to begin on September 8, 2015. (*See* ECF Nos. 59, 94.)

**III.** **Discussion**

On August 14, 2015, Defendant filed the instant motion (ECF No. 98), seeking an order excluding Dr. Valliere's testimony. Specifically, Defendant argues that the Government has not provided adequate notice of the expert opinion that it intends to offer at trial, in violation of Rule 16(a)(1)(G) of the Federal Rules of Procedure. (*Id.* ¶¶ 3-4.) Next, Defendant claims that the Government intends to have Dr. Valliere testify regarding Child Sexual Abuse Accommodation Syndrome (CSAAS), which he contends is admissible "solely for the purpose of rehabilitation of a witness' credibility and not in any manner towards whether the alleged incident actually took place." (*Id.* ¶¶ 6, 8.)

Defendant also argues that Dr. Valliere's testimony does not meet the *Daubert* standard because it is unreliable, irrelevant, and prejudicial. (*Id.* ¶ 9.) First, Defendant

2

contends that the testimony is unreliable because "studies show that CSAAS appears in only 6% of children" and because CSAAS evidence on the issue of recantation "is most common when the alleged perpetrator is a family member." (*Id.* ¶ 10.) Second, Defendant asserts that the testimony is irrelevant in that Dr. Valliere's testimony "is limited to the research and knowledge of the field" because she has not directly observed and evaluated any of the alleged victims. (*Id.* ¶ 11.) Defendant further argues that each alleged victim is beyond the age of majority, and neither the Government nor Dr. Valliere can present evidence or testimony that CSAAS extends into adulthood because no such research exists. (*Id.*) Defendant also asserts that each alleged victim is a native of Honduras, and neither the Government nor Dr. Valliere can present evidence or testimony that CSAAS is "a universal symptom and not a cultural symptom." (*Id.*) Third, Defendant argues that Dr. Valliere's testimony is prejudicial because the jury "[c]ould take CSAAS testimony to state that the particular alleged abuse did happen and not use it as solely weight of credibility." (*Id.* ¶ 12.)

In response, the Government asserts that it has provided adequate notice to Defendant. (ECF No. 100 at 1-2.) The Government requests that the Court deny Defendant's motion — which is based upon an argument that the Government intends to have Dr. Valliere testify about CSAAS — as moot because the Government's expert notice "makes clear that Dr. Valliere will not testify regarding the existence of any particular syndrome, nor will she opine as to whether or not any of the victims in the instant prosecution exhibit characteristics consistent with [CSAAS]." (*Id.* at 2.) The Government

3

explains that because Dr. Valliere has not interviewed the victims and has not generated any clinical-examination reports, she "will be limited to testimony concerning general characteristics of child sex abuse victims, victim-offender dynamics, and offender characteristics." (*Id.*)  The Government notes that such testimony is permitted and cites to cases wherein courts allowed testimony regarding the emotional and psychological characteristics of sexually abused children.  (*Id.* at 3-4.)  The Government asserts that Dr. Valliere's testimony will "assist the jury in understanding the reasons why child sexual assault victims may initially hid[e] the abuse; delay the disclosure; and/or attempt to deny the abuse."  (*Id.* at 4.)  Because Dr. Valliere "will not testify about the existence of CSAAS," the Government asks the Court to deny Defendant's motion.  (*Id.*)

In his reply, Defendant asserts that "[n]o report or summary from Dr. Valliere has been provided at any point to [him], but simply a letter from the Government dated August 7, 2015."  (ECF No. 101 at 1.)  Defendant argues that "the testimony the Government intends to offer is substantially similar in nature to the tenets of CSAAS or so intrinsically related to CSAAS that it would be nearly indistinguishable from the same." (*Id.* at 2.)  Defendant also contends that Dr. Valliere's proposed testimony does not meet the *Daubert* standard because there are no studies establishing that a child's behavior and responses extend into adulthood.  (*Id.* at 3.)

### A. Rule 16 Notice

Initially, the Court will address Defendant's argument that the Government's notice is deficient.  Rule 16(a) of the Federal Rule of Criminal Procedure provides:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

FED. R. CRIM. P. 16(a)(1)(G). The Government provided Defendant with a Rule 16 disclosure, giving notice to Defendant of the Government's intention to use Dr. Valliere as an expert witness. (*See* [ECF No. 100-1.](ECF No. 100-1)) The disclosure included a summary of Dr. Valliere's testimony, explaining that her testimony will involve "clinical and forensic psychology; sexual assault and sexual abuse; victim behavior and dynamics; offender behavior; and child sex abuse." (*Id.*) The Government also included a detailed list of topics upon which Dr. Valliere may provide opinion testimony:

> a. Various victim behaviors, particularly those involving victims of sexual assault or sexual abuse, which may include behavior which is counterintuitive to the average juror;
>
> b. Common victim reactions, including: physical, emotional and mental responses to incidents of physical and/or sexual abuse or exploitation; including, but not limited to: shame; fear; hyper-vigilance; guilt; disbelief; and a fear of not being believed and/or stigmatized by members of their family and/or community;
>
> c. Why victims, particularly victims of sexual abuse and child victims of abuse, often refuse to disclose their abuse or wait long periods of time before disclosing their abuse; disclose abuse over time and/or piecemeal; and may later attempt to deny or recant previous allegations of sexual and/or physical abuse or exploitation;
>
> d. Common victim characteristics and or reactions during incidents of sexual abuse and exploitation, which may include both active resistance as well as passive compliance;

e.  Certain victim/offender dynamics, including why victims may experience conflicting feelings and/or emotions towards their abusers, including ongoing love, affection, dependence and the need for connection with their perpetrator(s);

f.  Common victim characteristics and experience, including but not limited to: previous abuse; cognitive capabilities; educational background; cultural and/or religious backgrounds; familial support and involvement; access to financial and other services; and previous experience with law enforcement and/or authority figures which may contribute to a victim's behavioral responses to abuse and acts of attempted abuse;

g.  Various offender characteristics, and the methods used by offenders to select specific victims and to "groom" or influence, persuade, coerce, force, threaten or induce victims into engaging in sexual acts, and the influence these factors have on victim behavior/response to acts of abuse;

h.  The importance of the relationship between the victim and the offender in nature, severity, and type of behavioral responses and reactions exhibited by victims of sexual abuse and the various strategies, methods and tactics employed by abusers;

i.  The reasons why victims choose to disclose their abuse; including various types of triggering events and/or life changes a victim may encounter which may affect their willingness to disclose abuse[.]

(*Id.*) Likewise, the Government attached to the disclosure Dr. Valliere's nine-page *curriculum vitae*, which extensively summarizes her education; areas of expertise; licensures; honors and achievements; employment history and training experience; doctoral dissertation; publications; trainings and inservices; conferences attended; and other relevant experience. (*Id.*) The written summary provided to Defendant by the Government sufficiently satisfies the notice requirements of Rule 16(a)(1)(G). *See United States v. McNeil*, No. 3:09-CR-320, 2010 U.S. Dist. LEXIS 290, at *22 (M.D. Pa. Jan. 5, 2010)

(explaining that the purpose of the disclosure requirement is to provide defendant with an opportunity to challenge the expert's opinion and qualifications).

The Court further finds that the Government's notice was timely. The Court notes that Rule 16 does not require the Government to automatically make disclosures. Rather, the Government must make disclosures only upon the request of a defendant. FED. R. CRIM. P. 16(a)(1)(G) ("*At the defendant's request*, the government must give to the defendant a written summary of any testimony that the government intends to use[.]") (emphasis added). Additionally, Rule 16 does not provide a specific timeline for expert disclosures. *See* FED. R. CRIM. P. 16(a)(1)(G). The Advisory Committee's Notes to the 1993 Amendment to Rule 16 state that "[a]lthough no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." FED. R. CRIM. P. 16 advisory committee's note. Here, without ever having received a request from Defendant, the Government provided Defendant with its disclosure.

More importantly, the Government has provided Defendant with notice four weeks before trial, which has been found to be sufficient notice. *See, e.g.*, *United States v. Burton*, 404 Fed. Appx. 617, 624 (3d Cir. 2010) (holding that notice two weeks before trial was not untimely because the Government provided a summary of the expert testimony and because the defendant was aware of the Government's intention to call a narcotics expert); *United States v. Rosario*, No. 09-CR-414, 2014 U.S. Dist. LEXIS 160626, at *9-10 (S.D.N.Y. Nov. 14, 2014) (holding that "[t]he Government's notice was provided less than two weeks before trial, but it was not so untimely under the circumstances of this case as

7

to warrant exclusion" because "the substance of the proposed testimony was not a surprise to the [d]efendant"); *United States v. Brock*, No. 3:06-CR-73, 2007 U.S. Dist. LEXIS 24534, at *9-10 (E.D. Tenn. Apr. 2, 2007) (holding that notice three weeks before trial was not untimely because the court "does not believe that the defendant will be sufficiently prejudiced to the extent that the expert should be disqualified"). In fact, a court in this district has held that "three to four weeks provides Defendant sufficient time to evaluate the government's experts and prepare any seemingly meritorious challenges that he deems as necessary." *United States v. Grier*, No. 2:12-CR-161, 2012 U.S. Dist. LEXIS 163010, at *13 (W.D. Pa. Nov. 15, 2012). The Court further notes that since receiving the letter, Defendant has retained Dr. Frank M. Dattilio as an expert in rebuttal to Dr. Valliere proposed testimony.[1] The Court therefore cannot conclude that Defendant will suffer prejudice. *See, e.g., United States v. Smith*, 701 F.3d 1002, 1008 (4th Cir. 2012) ("[A] defendant seeking reversal under Rule 16(a)(1)(G) must also demonstrate prejudice resulting from the district court's decision to admit the contested testimony.") (internal quotations omitted). Accordingly, the letter and attachments provided to Defendant by the Government satisfy the notice requirements of Rule 16(a)(1)(G) and were sufficiently timely.

    B.    **Relevance of the Proposed Testimony**

Next, the Court finds that Dr. Valliere's proffered testimony is relevant to proving the offenses charged in this case and is not unfairly prejudicial and that her testimony, as

---

[1] The Government has filed a motion to exclude Dr. Dattilio's expert testimony ([ECF No. 116](ECF No. 116)), which the Court will address by separate order.

summarized in the Government's disclosure and at the *Daubert* hearing, will help the jury in making a determination of the facts at issue in this case. Importantly, and relevant to the motion at issue, the Government must prove that Defendant engaged in illicit sexual conduct in a foreign place. The Government notes that the charges in the indictment span over a five-year period, but Minor 3's disclosure of sexual abuse "did not occur until 2014 — over [ten] years after the sexual abuse began." (ECF No. 100 at 4.) As explained in the Government's summary, and as Dr. Valliere explained at the *Daubert* hearing, she will testify regarding why child sexual abuse victims may initially hide the abuse, delay disclosure, and/or attempt to recant the abuse. Such testimony meets the admissibility threshold of Rule 401.[2]

Defendant asserts that Dr. Valliere's testimony is irrelevant because she has not directly observed and evaluated any of the alleged victims. However, Dr. Valliere testified at the *Daubert* hearing that she has conducted hundreds of interviews of child sexual

---

[2] Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Rule 402 states that relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. FED. R. EVID. 402. Although evidence must be relevant to be admissible, Rule 401 does not set a high standard for admissibility. *Hurley v. Atl. City Police Dep't*, 174 F. 3d 95, 109–10 (3d Cir. 1999) (citation omitted). As the Third Circuit has explained:

> [R]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Because the rule makes evidence relevant if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has *no* tendency to prove the fact.

*Blancha v. Raymark Indus.*, 972 F. 2d 507, 514 (3d Cir. 1992) (emphasis in original) (citations and quotations omitted).

abuse victims. Moreover, there is no requirement that an expert must have interviewed the alleged victims before testifying regarding victim characteristics. *See, e.g.*, *Hensley v. Lafler*, No. 1:09-CV-937, 2012 U.S. Dist. LEXIS 151523, 46-47 (W.D. Mich. Sept. 26, 2012) ("Here, [the expert] testified in regard to typical and relevant symptoms of child sexual abuse. There is no requirement that the putative expert familiarize himself with the individual case. To do so makes it more likely that [the expert] would improperly testify that the sexual abuse occurred, vouch for the veracity of [the victim] and testify whether [the defendant] is guilty.") (internal quotations omitted).

Likewise, Dr. Valliere's testimony satisfies the balancing requirement of Rule 403 because the probative value of her testimony will not be substantially outweighed by any danger of unfair prejudice.[3] Specifically, the Court notes that Dr. Valliere has not interviewed the victims in this case and has not generated any clinical examination reports. Rather, Dr. Valliere's testimony will provide the jury with background information regarding general characteristics of child sex abuse victims, victim-offender dynamics, and offender characteristics. The prejudicial effect of the proposed testimony is low and is outweighed by its probative value.

---

[3] Under Rule 403, relevant evidence is inadmissible "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Rule 403 mandates a balancing test, "requiring sensitivity on the part of the trial court to the subtleties of the particular situation." *United States v. Vosburgh*, 602 F. 3d 512, 537 (3d Cir. 2010). Relevant here, the advisory committee's notes to Rule 403 state that "unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee's note; *see Dollar v. Long Mfg., N.C., Inc.*, 561 F. 2d 613, 618 (5th Cir. 1977) ("Of course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'").

Furthermore, Dr. Valliere's proposed testimony does not violate Rule 704 of the Federal Rules of Evidence. Rule 704(b) provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

FED. R. EVID. 704(b). The Third Circuit has explained the contours of Rule 704(b) as follows:

> [U]nder Rule 704(b)[,] expert testimony is admissible if it merely supports an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.
>
> Furthermore, in a Seventh Circuit case, . . . [the expert's] testimony was admitted and upheld against a Rule 704(b) attack identical to [the] attack here . . . . [because the expert] was only permitted to testify to the methods and techniques employed by preferential child molesters. The prosecution would not ask [the expert] to give his opinion about [the defendant] or to comment about his intent or culpability. . . . . The Seventh Circuit held that [the expert's] responses did not violate Rule 704(b) because his testimony did not amount to a statement of his belief about what specifically was going through [the defendant's] mind when he met [the victim].

*United States v. Hayward*, 359 F.3d 631, 636-37 (3d Cir. 2004) (internal citations and quotations omitted). *See also United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008) ("[T]he expert is permitted to testify . . . with respect to the mental state or condition of the defendant. The psychologist could not have been permitted to testify that the defendant did not intend to have sex with [the victim], but he could have testified that it was

11

unlikely, given the defendant's psychology, that he would act on his intent.") (internal quotations omitted).

Here, Dr. Valliere's testimony is not being offered to show Defendant's mental state or condition constituting an element of the crime charged. Instead, Dr. Valliere's opinion concerns common victim behaviors, reactions, and characteristics; victim/offender dynamics; and offender characteristics. Such testimony will be helpful to the jury in deciding a fact at issue and does not violate Rule 704. *See Hayward*, 458 F. 3d 202, 212 (3d Cir. 2006) (explaining that expert's testimony "elucidated the motives and practices of an acquaintance molester" but did not "opine[ ] as to [the defendant's] mental state"); *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (holding that "[i]n the context of child sexual abuse cases, a qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits").

To be clear, Dr. Valliere is not permitted to testify concerning the Defendant's intent, mental state, or mens rea. *See, e.g., Hayward*, 458 F. 3d at 212; *United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008) (explaining that, under Rule 704(b), "[t]he psychologist could not have been permitted to testify that the defendant did not intend to have sex with [the victim]"). However, Dr. Valliere's proffered testimony, as summarized in the disclosure provided by the Government and at the *Daubert* hearing, does not

transgress Rule 704(b) because it does not "draw the ultimate inference or conclusion for the jury."[4] *United States v. Bennett*, 161 F. 3d 171, 183 (3d Cir. 1998).

C. **Rule 702 Admissibility**

Finally, Rule 702 provides that an expert witness may be permitted to testify regarding "scientific, technical, or other specialized knowledge" if it will "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. For expert testimony to be admissible, three additional requirements must be satisfied: (1) the testimony must be "based upon sufficient facts or data," (2) the testimony must be "the product of reliable principles and methods," and (3) the expert witness must have "reliably applied the principles and methods to the facts of the case." *Id.* The Court is thus obligated to consider a "trilogy of restrictions" before admitting expert testimony: qualification, reliability, and fit. *Schneider ex rel. Estate of Schneider v. Fried,* 320 F. 3d 396, 404 (3d Cir. 2003). The Third Circuit has elaborated as follows:

> Qualification refers to the requirement that the witness possess specialized expertise. . . . . Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his on her belief. . . . . Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant[.]

*Id.* (internal citations and quotations omitted). The party offering the expert testimony must prove the Rule 702 requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F. 3d 613, 663 (3d Cir. 1999). The trial judge serves as a "gatekeeper" in

---

[4] At the *Daubert* hearing, Dr. Valliere testified that the only background information that she had about this case was that it involves the sexual abuse of minors in Honduras.

determining the admissibility of proposed expert testimony. *United States v. Schiff*, 602 F. 3d 152, 172 (3d Cir. 2010); *Encore Med., L.P. v. Kennedy*, No. 3:12-CV-58, 2013 U.S. Dist. LEXIS 188553, at *4 (W.D. Pa. Dec. 30, 2013).

Defendant argues that Dr. Valliere's testimony does not meet the *Daubert* standard because it is unreliable and prejudicial. In support of his argument, Defendant contends that the Government will introduce CSAAS testimony, which is unreliable and unhelpful to the jury. He further asserts that he "has been unable to locate any instance where CSAAS evidence has been ruled admissible within the Third Circuit." (ECF No. 98 at 2.) In response, the Government states that Dr. Valliere will not testify regarding CSAAS, nor will she opine whether any of the victims exhibit characteristics consistent with CSAAS. (ECF No. 100 at 2.)

Initially, the Court notes, and as Defendant has conceded, "CSAAS evidence has been ruled admissible in other jurisdictions." (ECF No. 98 at 2.) Moreover, contrary to Defendant's research, courts within the Third Circuit have determined that CSAAS testimony is admissible. *See, e.g.*, *Beltran v. Hastings*, No. 12-CV-2042, 2014 U.S. Dist. LEXIS 57639, at *36 (D.N.J. Apr. 24, 2014) ("[I]ntroduction of [CSAAS] testimony will be upheld so long as the expert does not attempt to 'connect the dots' between the particular child's behavior and the syndrome, or opine whether the particular child was abused."); *Cusumano v. McFarland*, No. 04-CV-5080, 2006 U.S. Dist. LEXIS 37540, at *19-20 (D.N.J. May 18, 2006) (rejecting claim that the trial court erred by failing to provide a limiting instruction after the prosecutor made comments regarding CSAAS).

Nonetheless, the Court notes that the Government has repeatedly stated that Dr. Valliere "will not testify regarding the existence of any particular syndrome, nor will she opine as to whether . . . any of the victims in the instant prosecution exhibit characteristics consistent with [CSAAS]." (ECF No. 100 at 2, 4.) At the *Daubert* hearing, Dr. Valliere did not discuss CSAAS and emphasized that she had not interviewed any of the victims in this case. Given these facts, the Court need not discuss whether CSAAS testimony is admissible.

Reviewing the record before the Court, including the evidence presented at the *Daubert* hearing, the Court finds that the Government has satisfied its burden of showing the qualification, reliability, and fit requirements under *Daubert* and Rule 702 to admit the expert testimony of Dr. Valliere. Regarding her education and training, Dr. Valliere received her Bachelor of Arts degree in psychology in 1987, and she received a Doctorate in psychology and clinical psychology in 1993. In 2003, Dr. Valliere received a Diplomate and is board certified in forensic psychology. She has also served on Pennsylvania's State Board to Assess Sexually Violent Predators after she was appointed by Governor Thomas Ridge in 1997 and was reappointed in 2001, 2005, 2009, and 2013. Dr. Valliere has conducted hundreds of interviews of child victims, and she has been found to be qualified as an expert more than fifty times. Dr. Valliere testified that she has never been found to be unqualified as an expert in her areas of expertise. Regarding her experience, Dr. Valliere has been working in the field of psychology since 1987, and she has owned and operated two outpatient psychology treatment facilities since 2003. Based on this

information, along with the evidence presented at the *Daubert* hearing, Dr. Valliere is qualified to offer opinion testimony regarding child sexual abuse issues regarding victims and perpetrators.

Likewise, Dr. Valliere's testimony, as summarized by the Government and as presented at the *Daubert* hearing, is both reliable and satisfies the fit requirement of Rule 702. *See, e.g.*, *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (holding that the admission of expert testimony regarding the modus operandi of child molesters, including grooming, was not an abuse of discretion); *Hayward*, 359 F.3d at 636-37 (upholding the admission of expert testimony regarding the grooming techniques of child molesters); *United States v. Romero*, 189 F.3d 576, 585-87 (7th Cir. 1999) (allowing expert testimony regarding the practices of child sex abusers); *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996) (upholding the admission of the expert testimony, which "was offered only to explain why children may be intimidated by physical abuse and deterred from complaining against the abuser"); *United States v. Johns*, 15 F.3d 740, 743 (8th Cir. 1994) (in a case where the expert did not interview the victim, upholding the district court's admission of expert testimony regarding the "emotional and psychological traits of abuse victims that often account for behavior such as delay in reporting the abuse or failure to 'escape' the abusive situation").

The Court finds Defendant's argument that Dr. Valliere's testimony does not meet the "fit" requirement of Rule 702 meritless. Specifically, Defendant contends that Dr. Valliere's testimony should not be admitted because she is unable to establish that a

child's behavior and responses in the United States has been "shown to be universal and applicable to all societies or[,] most specifically[,] to individuals in Honduran society and culture." (ECF No. 101 at 3.) The Court finds credible the testimony that Dr. Valliere provided at the *Daubert* hearing, wherein she stated that she has no reason to believe that the issues about which she will testify stop at the border of the United States. Thus, Dr. Valliere will be permitted to testify as an expert in the areas the Government included in its August 7, 2015, letter. (*See* ECF No. 100-1; *see also supra*, Part III.A.)

**IV.  Conclusion**

For the foregoing reasons, Dr. Valliere's proposed expert opinion testimony satisfies the requirements of Rule 702. The Court will therefore deny Defendant's motion (ECF No. 98) to exclude the expert testimony of Dr. Valliere.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 3:14-23 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| JOSEPH D. MAURIZIO, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 8th day of September, 2015, upon consideration of Defendant's motion to exclude the expert testimony of Dr. Veronique Valliere (ECF No. 98), the Government's response in opposition (ECF No. 100), and Defendant's reply (ECF No. 101), and in accordance with the foregoing memorandum opinion of this Court, **IT IS HEREBY ORDERED** that the Defendant's motion is **DENIED** and the Government may introduce the opinion testimony of Dr. Veronique Valliere in its case in chief in the areas set forth in the Government's August 7, 2015, notice (ECF No. 100-1).

BY THE COURT:

/s/ Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE