IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 3:14-23 |
| v. ) | |
| ) | JUDGE KIM R. GIBSON |
| JOSEPH D. MAURIZIO, JR., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**I.     Introduction**

Before the Court in this matter is the Government's Motion to Exclude Testimony Pursuant to Federal Rule of Evidence 16(d)(2)(C) and/or Motion to Compel Discovery Pursuant to Federal Rule of Evidence 16(b)(1)(C). (ECF No. 116.) The parties submitted briefing on the issue (ECF Nos. 116, 122, 127, 129), and the Court held a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (U.S. 1993)/Rule 702 hearing on September 11, 2015. For the reasons that follow, the Court will deny the Government's motion (ECF No. 116).

**II.    Background**

On September 25, 2014, a criminal complaint (ECF No. 1) was filed against Defendant Joseph D. Maurizio, Jr., charging him with engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c), and with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4). On October 7, 2014, the grand jury issued a two-count indictment (ECF No. 16), charging Defendant at Count One with engaging in illicit sexual conduct with a minor in foreign places, in violation of 18 U.S.C. §

2423(c), and at Count Two with possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. 2252(a)(4)(B).

On April 7, 2015, the grand jury issued an eight-count superseding Indictment (ECF No. 69), charging Defendant at Count One with engaging in illicit sexual conduct with a minor in foreign places, in violation of 18 U.S.C. § 2423(c), at Count Two with possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. 2252(a)(4)(B), at Counts Three through Five with engaging in and attempting to engage in illicit sexual conduct in foreign places, in violation of 18 U.S.C. § 2423(c), and at Counts Six through Eight with the transporting, transmitting, or transferring of funds or monetary instruments into or out of the United States with the intent to promote carrying on of a specified unlawful activity, in violation of 19 U.S.C. § 1956(a)(2)(A). Trial in this matter began on September 8, 2015. (*See* ECF Nos. 59, 94.)

**III.   Discussion**

On September 2, 2015, the Government filed the instant motion (ECF No. 116), seeking an order to exclude the testimony of Defendant's expert, Dr. Frank M. Dattilio. Specifically, the Government argues that Defendant has not provided adequate notice of the expert opinion that he intends to offer at trial, in violation of Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure. (*Id.* at 2-4.) The Government states that it received an e-mail from Defendant on August 31, 2015, that only listed Dr. Dattilio's name as his expert witness and failed to provide his qualifications, his opinions, and the bases for his opinions. (*Id.* at 2; *see also* ECF No. 116-3.) The Government asserts that it is "at a

tremendous disadvantage" because it "is unable to challenge the admissibility of this individual's testimony and seek a *Daubert* hearing to challenge testimony which [Defendant] has failed to outline." (ECF No. 116 at 3.)

Defendant filed a response on September 3, 2015, stating that the Government did not notify him that it intended to introduce the testimony of Dr. Veronique Valliere until August 7, 2015. (ECF No. 122 at 1.) Defendant further states that he and the Government had a meeting in August, at which time the Government inquired as to whether Defendant intended to call an expert witness. (*Id.* at 2.) Defendant informed the Government that he did not initially intend to use an expert, but he stated that "since the Court had ordered a *Daubert* hearing on [his] Motion to Exclude Expert Testimony [of Dr. Valliere, he] was hoping to wait on retaining an expert pending the ruling of the court." (*Id.*) However, Defendant asserts that he later "provided the Government the appropriate Notice under Rule 16," along with a *curriculum vitae* and a summary of Dr. Dattilio's testimony. (*Id.*) Defendant argues that "[t]here is no need for any further *Daubert* hearing" because "[t]he purpose of *Daubert* is not to question the qualifications of an expert[,] but rather to test the subject matter at issue before the jury." (*Id.* at 3.)

On September 4, 2015, the Government filed an Omnibus Sureply to Defendant's Recently Filed Replies and renewed its request for a *Daubert* hearing. (ECF No. 127 at 1.) The Government states that it received a letter, "which properly identified [Defendant's] proposed expert" on September 2, 2015. (*Id.* at 2; *see also* ECF No. 127-1.) The Government argues that a *Daubert* hearing is necessary to ensure that the proposed

3

testimony is relevant and reliable. (ECF No. 127 at 3.) In his response, filed on September 4, 2015, Defendant "rests on the arguments . . . relayed to this Honorable Court in [his] prior [reply]." (ECF No. 129 at 1.)

A *Daubert* hearing was held on September 11, 2015, at which time the Government had an opportunity to cross-examine Dr. Dattilio. Thus, the Court need not address the parties' arguments regarding whether a *Daubert* hearing was necessary but will determine whether Defendant's notice was adequate and whether Dr. Dattilio's proposed testimony meets the *Daubert* standard.

### A. Rule 16 Notice

Initially, the Court will address the Government's argument that Defendant's notice is deficient. Rule 16(b)(1)(C) of the Federal Rule of Criminal Procedure provides:

> (C) Expert witnesses. The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if--
>     (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or
>     (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
> This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications[.]

FED. R. CRIM. P. 16(b)(1)(C). On September 2, 2015, Defendant provided the Government with a Rule 16 disclosure, giving notice to the Government of Defendant's intention to use Dr. Dattilio as an expert witness. (*See* ECF No. 127-1.) The disclosure included a summary of Dr. Dattilio's testimony, explaining that his testimony will involve "general

4

statistics v. clinical examination and the ethical ramifications thereof. In particular, he will address that generalized statistics have no bearing on an individual case and they cannot be presumed to be applicable to any individual's case without a clinical examination of the alleged victim." (*Id.*) In addition, Defendant stated that Dr. Dattilio "will testify to the unique cultural differences between America/First World cultures and Central/South American cultures and the impact that would have on the disclosure process in regards to an alleged victim." (*Id.*) Dr. Dattilio "will address that there is no universality between cultures and will stress that what studies in American culture show cannot be applied to other cultures." (*Id.*) Defendant also stated that Dr. Dattilio "will address any other salient points of the Government's expert." (*Id.*)

Defendant attached to the disclosure Dr. Dattilio's forty-four page *curriculum vitae*, which extensively summarizes his education; licenses and certifications; present positions; clinical experience; teaching experience and faculty appointments; consulting and forensic experience; honorary societies and professional organizations; research and publications; grants, awards, and academic publications; editorial, scientific review, and examination boards; and invited workshops, presentations, and colloquium. (*Id.*) As the Government concedes, the disclosure provided to the Government by Defendant "properly identified [Defendant's] proposed expert," (ECF No. 127 at 2), and sufficiently satisfies the notice requirements of Rule 16(b)(1)(C). *See United States v. Hoffecker*, 530 F.3d 137, 185 (3d Cir. 2008) (stating that Rule 16(b)(1)(C) "is meant to prevent the defendant from obtaining an unfair advantage" and "to provide the opponent with a fair opportunity to test the merit

5

of the expert's testimony"); *United States v. Lignelli*, No. 2:11-cr-234, 2014 U.S. Dist. LEXIS 69464, at *3 (W.D. Pa. May 21, 2014) (explaining that "[u]nder the plain text of Rule 16(b)(1)(C), the written summary provided by Defendant must describe: (1) the witness's opinions; (2) the bases and reasons for those opinions; and (3) the witness's qualifications").

The Court further finds that Defendant's notice was timely. The Court notes that the Government did not provide Defendant with notice of its intention to call Dr. Valliere as its expert witness until August 7, 2015. (*See* ECF No. 100-1.) Defendant informed the Government at a meeting later that month that he was considering calling an expert to rebut Dr. Valliere's testimony, depending upon the Court's ruling of the admissibility of Dr. Valliere's testimony. (*See* ECF No. 122 at 2.) Because the Court was unable to hold a *Daubert* hearing regarding Dr. Valliere's testimony until September 3, 2015, Defendant provided the Government with his notice on September 2, 2015. (*See* ECF No. 127-1.)

Rule 16 does not provide a specific timeline for expert disclosures. *See* FED. R. CRIM. P. 16(b)(1)(C). The Advisory Committee's Notes to the 1993 Amendment to Rule 16 state that "[a]lthough no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." FED. R. CRIM. P. 16 advisory committee's note. Here, Defendant explained that he had no intention of calling an expert until he received notice that the Government intended to call Dr. Valliere as its expert, and he intends to call Dr. Dattilio to rebut Dr. Valliere's testimony.

6

At the *Daubert* hearing, Defendant stated that he initially intended to present Dr. Dattilio's testimony on September 25, 2015. However, in an effort to expedite the trial and to avoid wasting the jury's time, Defendant proposed presenting Dr. Dattilio's testimony on September 18, 2015. Thus, the Government will have had sixteen days to prepare for its cross-examination of Dr. Dattilio. Given the circumstances of Defendant's presentation of Dr. Dattilio to rebut Dr. Valliere's testimony, along with the fact that the Court has found Dr. Valliere's testimony to be admissible (ECF No. 133), the Court finds that Defendant's notice was timely under Rule 16(b)(1)(C). *See, e.g.*, *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (stating that "assuming there was an omission of some sort [with respect to the disclosure], it was not willfully done to gain a tactical advantage" and finding that the "severe sanction of total exclusion of the testimony was disproportionate to the alleged harm"); *United States v. Williams*, No. 10-CR-213, 2011 U.S. Dist. LEXIS 52013, at *11 (E.D. La. Apr. 4, 2011) (holding that the defendant's failure to provide the Government with the disclosure of his expert witness until "slightly more than a week before trial" did not "necessitate[] the most extreme sanction possible" of excluding the expert) (internal quotations omitted). Accordingly, the letter and attachments provided to the Government by Defendant satisfy the notice requirements of Rule 16(b)(1)(C) and were sufficiently timely, and the Court need not compel Defendant to provide the Government with his Rule 16(b)(1)(C) notice.

### B. Relevance of the Proposed Testimony

Next, the Court finds that Dr. Dattilio's proffered testimony is relevant to the offenses charged in this case and is not unfairly prejudicial and that his testimony, as summarized in Defendant's disclosure and at the *Daubert* hearing, will help the jury in making a determination of the facts at issue in this case. Importantly, and relevant to the motion at issue, Defendant intends to offer testimony establishing that the Government has not met its burden of proof to establish that Defendant engaged in illicit sexual conduct in a foreign place. The Government has noted that the charges in the indictment span over a five-year period, but Minor 3's disclosure of sexual abuse "did not occur until 2014 — over [ten] years after the sexual abuse began." (ECF No. 100 at 4.) The Government will introduce Dr. Valliere's testimony to explain why child sexual abuse victims may initially hide the abuse, delay disclosure, and/or attempt to recant the abuse. In rebuttal, Dr. Dattilio "will address that generalized statistics have no bearing on an individual case and they cannot be presumed to be applicable to any individual's case without a clinical examination of the alleged victim." (ECF No. 127-1.) Such testimony meets the admissibility threshold of Rule 401.[1]

---

[1] Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Rule 402 states that relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. FED. R. EVID. 402. Although evidence must be relevant to be admissible, Rule 401 does not set a high standard for admissibility. *Hurley v. Atl. City Police Dep't*, 174 F. 3d 95, 109–10 (3d Cir. 1999) (citation omitted). As the Third Circuit has explained:

> [R]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.

Likewise, Dr. Dattilio's testimony satisfies the balancing requirement of Rule 403 because the probative value of his testimony will not be substantially outweighed by any danger of unfair prejudice.[2] Specifically, the Court notes that Dr. Dattilio, like Dr. Valliere, has not interviewed the victims in this case and has not generated any clinical examination reports. Rather, Dr. Dattilio's testimony will address the "salient points of the Government's expert," (ECF No. 127-1), which include background information regarding general characteristics of child sex abuse victims, victim-offender dynamics, and offender characteristics.[3] As the Court found in regards to Dr. Valliere's testimony (*id.* at 10), the prejudicial effect of the proposed testimony is low and is outweighed by its probative value.

> Because the rule makes evidence relevant if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has *no* tendency to prove the fact.

*Blancha v. Raymark Indus.*, 972 F. 2d 507, 514 (3d Cir. 1992) (emphasis in original) (citations and quotations omitted).

---

[2] Under Rule 403, relevant evidence is inadmissible "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Rule 403 mandates a balancing test, "requiring sensitivity on the part of the trial court to the subtleties of the particular situation." *United States v. Vosburgh*, 602 F. 3d 512, 537 (3d Cir. 2010). Relevant here, the advisory committee's notes to Rule 403 state that "unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee's note; *see Dollar v. Long Mfg., N.C., Inc.,* 561 F. 2d 613, 618 (5th Cir. 1977) ("Of course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'").

[3] The Court has held that Dr. Valliere may provide opinion testimony regarding the following topics: various victim behaviors, common victim reactions, victims' disclosure of abuse, common victim characteristics, certain victim/offender dynamics, common victim characteristics and experience, various offender characteristics, the importance of the relationship between the victim and the offender, and the reasons why victims choose to disclose their abuse. (ECF No. 133 at 5-6.)

Furthermore, Dr. Dattilio's proposed testimony does not violate Rule 704 of the Federal Rules of Evidence. Rule 704(b) provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

FED. R. EVID. 704(b). The Third Circuit has explained the contours of Rule 704(b) as follows:

> [U]nder Rule 704(b)[,] expert testimony is admissible if it merely supports an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.
>
> Furthermore, in a Seventh Circuit case, . . . [the expert's] testimony was admitted and upheld against a Rule 704(b) attack identical to [the] attack here . . . . [because the expert] was only permitted to testify to the methods and techniques employed by preferential child molesters. The prosecution would not ask [the expert] to give his opinion about [the defendant] or to comment about his intent or culpability. . . . . The Seventh Circuit held that [the expert's] responses did not violate Rule 704(b) because his testimony did not amount to a statement of his belief about what specifically was going through [the defendant's] mind when he met [the victim].

*United States v. Hayward*, 359 F.3d 631, 636-37 (3d Cir. 2004) (internal citations and quotations omitted). *See also United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008) ("[T]he expert is permitted to testify . . . with respect to the mental state or condition of the defendant. The psychologist could not have been permitted to testify that the defendant did not intend to have sex with [the victim], but he could have testified that it was

10

unlikely, given the defendant's psychology, that he would act on his intent.") (internal quotations omitted).

Here, Dr. Dattilio's testimony is not being offered to show Defendant's mental state or condition constituting an element of the crime charged. Instead, Dr. Dattilio's opinion will be in rebuttal to Dr. Valliere's opinions concerning common victim behaviors, reactions, and characteristics; victim/offender dynamics; and offender characteristics. Dr. Dattilio will also testify regarding "general statistics v. clinical examination and the ethical ramifications thereof" and "the unique cultural differences between America/First World cultures and Central/South American cultures and the impact that would have on the disclosure process in regards to an alleged victim." (ECF No. 127-1.) Such testimony will be helpful to the jury in deciding a fact at issue and does not violate Rule 704. *See Hayward*, 458 F. 3d 202, 212 (3d Cir. 2006) (explaining that expert's testimony "elucidated the motives and practices of an acquaintance molester" but did not "opine[ ] as to [the defendant's] mental state"); *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (holding that "[i]n the context of child sexual abuse cases, a qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits").

To be clear, Dr. Dattilio, like Dr. Valliere, is not permitted to testify concerning the Defendant's intent, mental state, or mens rea. *See, e.g.*, *Hayward*, 458 F. 3d at 212; *United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008) (explaining that, under Rule 704(b), "[t]he psychologist could not have been permitted to testify that the defendant did not

11

intend to have sex with [the victim]"). However, Dr. Dattilio's proffered testimony, as summarized in the disclosure provided by Defendant and at the *Daubert* hearing, does not transgress Rule 704(b) because it does not "draw the ultimate inference or conclusion for the jury."[4] *United States v. Bennett*, 161 F. 3d 171, 183 (3d Cir. 1998).

C.     **Rule 702 Admissibility**

Finally, Rule 702 provides that an expert witness may be permitted to testify regarding "scientific, technical, or other specialized knowledge" if it will "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. For expert testimony to be admissible, three additional requirements must be satisfied: (1) the testimony must be "based upon sufficient facts or data," (2) the testimony must be "the product of reliable principles and methods," and (3) the expert witness must have "reliably applied the principles and methods to the facts of the case." *Id.* The Court is thus obligated to consider a "trilogy of restrictions" before admitting expert testimony: qualification, reliability, and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F. 3d 396, 404 (3d Cir. 2003). The Third Circuit has elaborated as follows:

> Qualification refers to the requirement that the witness possess specialized expertise. . . . . Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his on her belief. . . . . Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant[.]

---

[4] At the *Daubert* hearing, Dr. Dattilio testified that he did not conduct any interviews in this case.

*Id.* (internal citations and quotations omitted). The party offering the expert testimony must prove the Rule 702 requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F. 3d 613, 663 (3d Cir. 1999). The trial judge serves as a "gatekeeper" in determining the admissibility of proposed expert testimony. *United States v. Schiff*, 602 F. 3d 152, 172 (3d Cir. 2010); *Encore Med., L.P. v. Kennedy*, No. 3:12-CV-58, 2013 U.S. Dist. LEXIS 188553, at *4 (W.D. Pa. Dec. 30, 2013).

Reviewing the record before the Court, including the evidence presented at the *Daubert* hearing, the Court finds that Defendant has satisfied his burden of showing the qualification, reliability, and fit requirements under *Daubert* and Rule 702 to admit the expert testimony of Dr. Dattilio. Regarding his education and training, Dr. Dattilio received his Bachelor of Arts degree in psychology in 1977, and he received a Ph.D. in psychoeducational processes in 1986 and in clinical psychology in 1992. From 1986 until 1988, Dr. Dattilio completed a post-doctoral fellowship in cognitive therapy, and he completed post-doctoral training in advanced forensic psychiatry from 2000 until 2001. Dr. Dattilio testified that he has never been found to be unqualified as an expert in his areas of expertise. Regarding his experience, Dr. Dattilio has been working in the field of psychology since 1977, and he has been working in private practice as a clinical and forensic psychologist since 1994. He also serves as a clinical associate in psychiatry at the University of Pennsylvania School of medicine, a teaching associate in trial advocacy at Harvard Law School, and as an instructor in psychiatry at Harvard Medical School.

Based on this information, along with the evidence presented at the *Daubert* hearing, Dr. Dattilio is qualified to offer opinion testimony.

Likewise, Dr. Dattilio's testimony, as summarized by Defendant and as presented at the *Daubert* hearing, is both reliable and satisfies the fit requirement of Rule 702. *See, e.g.*, *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (holding that the admission of expert testimony regarding the modus operandi of child molesters, including grooming, was not an abuse of discretion); *Hayward*, 359 F.3d at 636-37 (upholding the admission of expert testimony regarding the grooming techniques of child molesters); *United States v. Romero*, 189 F.3d 576, 585-87 (7th Cir. 1999) (allowing expert testimony regarding the practices of child sex abusers); *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996) (upholding the admission of the expert testimony, which "was offered only to explain why children may be intimidated by physical abuse and deterred from complaining against the abuser"); *United States v. Johns*, 15 F.3d 740, 743 (8th Cir. 1994) (in a case where the expert did not interview the victim, upholding the district court's admission of expert testimony regarding the "emotional and psychological traits of abuse victims that often account for behavior such as delay in reporting the abuse or failure to 'escape' the abusive situation").

Following the *Daubert* hearing, the Government argued that Dr. Dattilio should not be permitted to testify regarding cultural variations because he failed to explain the basis for his opinion. The Court finds that the proposed testimony meets the "fit" requirement of Rule 702. The Court notes that it will permit Dr. Valliere to testify that she

has no reason to believe that the issues about which she will testify stop at the border of the United States. (*See* ECF No. 133 at 16-17.) Similarly, Dr. Dattilio testified that he teaches in Central America and has experience with assessing Spanish-speaking patients. The Court finds credible Dr. Dattilio's testimony at the *Daubert* hearing, wherein he stated that he has experience regarding cultural sensitivities based upon his experience and training. Thus, Dr. Dattilio will be permitted to testify as an expert in the areas Defendant included in his September 2, 2015, letter. (*See* ECF No. 127-1.)

**IV.     Conclusion**

For the foregoing reasons, Dr. Dattilio's proposed expert opinion testimony satisfies the requirements of Rule 702. The Court will therefore deny the Government's motion (ECF No. 116) to exclude the expert testimony of Dr. Dattilio.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 3:14-23 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| JOSEPH D. MAURIZIO, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 15th day of September, 2015, upon consideration of the Government's motion to exclude the expert testimony of Dr. Frank M. Dattilio (ECF No. 116), Defendant's response in opposition (ECF No. 122), and the Government's omnibus sureply (ECF No. 127), and Defendant's response (ECF No. 129), and in accordance with the foregoing memorandum opinion of this Court, **IT IS HEREBY ORDERED** that the Government's motion is **DENIED** and Defendant may introduce the opinion testimony of Dr. Frank M. Dattilio in his case in chief in the areas set forth in Defendant's September 2, 2015, notice (ECF No. 127-1).

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE