## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 3:14-23 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| JOSEPH D. MAURIZIO, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

This case arises from charges that Defendant engaged in or attempted to engage in illicit sexual conduct in a foreign place; possessed visual depictions involving the use of a minor engaging in sexually explicit conduct; and transported, transmitted, or transferred funds or monetary instruments out of the United States with the intent to promote illicit sexual conduct in a foreign place.  Trial in this matter was held from September 8, 2015, until September 22, 2015.  (*See* ECF Nos. 59, 94, 158.)  Presently before the Court are Defendant's Motions for Judgment of Acquittal, which he made at the close of the Government's case-in-chief on September 16, 2015, and on September 22, 2015, after the verdict was delivered.  For the reasons explained below, the Court will grant in part and deny in part Defendant's motions.

### II.    Applicable Law

As will be explained in more detail below, the pending motions involve whether the evidence was insufficient to sustain Defendant's convictions.  The Court will briefly

set forth the legal principles governing motions for judgment of acquittal and the elements of the charged offenses.

### A. Rule 29, Motion for Judgment of Acquittal

Defendant's motions were raised pursuant to Federal Rule of Criminal Procedure 29, which provides:

> (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.
>
> (b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.
>
> (c) After Jury Verdict or Discharge.
> (1) Time for a Motion. A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.
> (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.
> (3) No Prior Motion Required. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

FED. R. CRIM. P. 29(a)-(c).

A defendant bears a significant burden on a Rule 29 motion. In considering a Rule 29 motion, the Court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010) (internal quotations omitted). In other words, the Court "must sustain a verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003) (internal quotations omitted). The Court must "examine the totality of the evidence, both direct and circumstantial," and "must credit all available inferences in favor of the government." *Id.* Additionally, the Court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence." *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (internal quotations omitted). The Court "will only find the evidence insufficient when the prosecution's failure is clear." *Id.*

### B. Elements of the Alleged Crimes

On September 25, 2014, a criminal complaint was filed against Defendant, charging him with engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c), and with possession of visual depictions involving the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4). (ECF No. 1.) On October 7, 2014, the grand jury issued a two-count Indictment, charging Defendant at Count One with engaging in illicit sexual conduct with a minor in foreign places, in violation of 18 U.S.C. § 2423(c), and at Count Two with possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B). (ECF No. 16.)

On April 7, 2015, the grand jury issued an eight-count Superseding Indictment, charging Defendant at Count One with engaging in illicit sexual conduct with a minor in foreign places, in violation of 18 U.S.C. § 2423(c), at Count Two with possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B), at Counts Three through Five with engaging in and attempting to engage in illicit sexual conduct in foreign places, in violation of 18 U.S.C. § 2423(c), and at Counts Six through Eight with the transporting, transmitting, or transferring of funds or monetary instruments into or out of the United States with the intent to promote the carrying on of a specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(A).  (ECF No. 69.)

To prove that Defendant committed the crime of engaging in or attempting to engage in illicit sexual conduct in a foreign place, the Government must have shown that: (1) Defendant traveled in foreign commerce or resided, either temporarily or permanently, in a foreign country, and (2) Defendant engaged in or attempted to engage in any illicit sexual conduct with another person, which is a sexual act with a person under 18 years of age, a commercial sex act with a person under 18 years of age, or the production of child pornography.  18 U.S.C. § 2423(c).

To prove that Defendant committed the crime of possession of visual depictions involving the use of a minor engaging in sexually explicit conduct, the Government must have shown that:  (1) Defendant knowingly possessed, or knowingly accessed with intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter, (2) the matter contained any visual depiction that had been mailed, or had been shipped or

transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, and (3) the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction was of such conduct. 18 U.S.C. § 2252(a)(4).

To prove that Defendant committed the crime of transporting, transmitting, or transferring funds or monetary instruments into or out of the United States with the intent to promote the carrying on of a specified unlawful activity, the Government must have shown that: (1) Defendant transported, transmitted, or transferred, or attempted to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States, and (2) Defendant did so with the intent to promote the carrying on of engaging in illicit sexual conduct. 18 U.S.C. § 1956(a)(2)(A).

III.    **Discussion**

As noted above, Defendant moved for a judgment of acquittal at the close of the Government's case-in-chief and after the jury delivered its verdict. On September 22, 2015, the jury found Defendant guilty of Counts One, Two, Three, Four, and Eight. (ECF No. 163.) The jury found Defendant not guilty of Counts Five, Six, and Seven. (*Id.*) The Court will separately address each motion and each count on which Defendant was found guilty.

**A.** **Motion for Judgment of Acquittal Made at the Close of the Government's Case**

At the close of the Government's case-in-chief on September 16, 2015, Defendant made a motion for judgment of acquittal. (ECF No. 153.) On September 17, 2015, pursuant to Federal Rule of Criminal Procedure 29(b), the Court reserved its decision on Defendant's motion. (ECF No. 154.) In accordance with Rule 29(b), the Court will decide the motion only on the basis of the evidence at the time the ruling was reserved, which was at the close of the Government's case-in-chief, (*see id.*). FED. R. CRIM. P. 29(b) ("If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.").

**i.** **Count One**

Count One of the Superseding Indictment charged Defendant as follows:

> Between on or about February 26, 2009, and March 13, 2009, the defendant, JOSEPH D. MAURIZIO, JR., a citizen of the United States, who was arrested in the Western District of Pennsylvania, did knowingly travel in foreign commerce, from the United States to Honduras, and engage in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with Minor #1, a boy who was under 18 years of age at the time that defendant JOSEPH D. MAURIZIO, JR. engaged in illicit sexual conduct with him.
> In violation of Title 18, United States Code, Section 2423(c).

(ECF No. 69.) The Government was therefore required to establish that (1) Defendant traveled in foreign commerce or resided, either temporarily or permanently, in Honduras,

and (2) Defendant engaged in any illicit sexual conduct with Minor #1, who was under the age of eighteen at the time and who is known as Otoniel.[1]  18 U.S.C. § 2423(c).

After examining the evidence that was presented during the Government's case-in-chief, the Court finds that the evidence was not insufficient to sustain a conviction as to Count One of the Superseding Indictment.  First, the Court notes that the Government and Defendant stipulated that Defendant traveled in foreign commerce from the United States to Honduras between February 26, 2009, and March 13, 2009.  (Government Ex. 236.)  The Government and Defendant also stipulated that Otoniel, who was born on June 1, 1994, was fourteen years old during the timeframe of February 26, 2009, and March 13, 2009.  (Government Ex. 237.)  Accordingly, the elements of the offense that Defendant traveled in foreign commerce or resided, either temporarily or permanently, in a foreign country, and that the victim was under the age of eighteen during the relevant timeframe were sufficient to reach the jury based upon the parties' stipulations.  18 U.S.C. § 2423(c).

Next, regarding the illicit sexual conduct, Otoniel testified that in 2001, Defendant asked him to touch him while they were inside a church.  (Test. of Otoniel, ECF No. 182 at 690-91, 696-97.)  When Otoniel refused, Defendant touched Otoniel over his pants.  (Id. at 690-92, 696-97.)  Otoniel also testified that Defendant put his penis inside him while they were inside a church in 2004, when Otoniel was ten years old.  (Id. at 692, 697.)  Otoniel stated that after Defendant placed his penis inside of him while they were inside the church, Otoniel cleaned himself up with paper that he retrieved from a box that was inside

---

[1] On September 15, 2015, the Court granted the Government's motion (ECF No. 144), requesting that the Court enter a protective order, pursuant to 18 U.S.C. § 3509(d)(3), to permit the testifying victims to use only their first names.  (ECF No. 148.)  Accordingly, the Court will refer to the victims only by their first names in this opinion.

the church.  (*Id.* at 692-93, 697.)  He stated that Defendant tried to give him $500 inside the church.  (*Id.* at 693, 697.)

Witness Luis testified that in 2009, while he was unloading a truck outside of the church, Defendant was inside the church organizing his items when he called for Otoniel to come inside the church.  (Test. of Luis, ECF No. 180 at 246-47, 257-58.)  Because the church doors were closed, Luis was unable to place the items that he was unloading inside the church.  (*Id.* at 258-59.)  Luis testified that he and two boys named Martin and Gerson looked through a window to peer inside the church.  (*Id.* at 258.)  When Luis looked through the window, he saw that Defendant had pulled Otoniel's pants down to his knees and was taking photographs of Otoniel's penis.  (*Id.* at 260.)  Luis then observed Defendant pull his pants down to his knees and stand in front of Otoniel, at which time Otoniel began to penetrate Defendant.  (*Id.* at 261.)  Defendant was leaning forward, and his hands were on Otoniel's buttocks.  (*Id.* at 262.)  Otoniel's hands were on Defendant's waist.  (*Id.*)  Luis testified that he watched Otoniel penetrate Defendant's rear end for five minutes.  (*Id.*)  When they finished, Defendant used toilet paper from a bag of donations that was inside the church to clean himself, and Otoniel also cleaned himself with toilet paper.  (*Id.* at 262-63.)  Luis stated that he then saw Defendant give Otoniel chocolates and money, which Otoniel was carrying when he exited the church.  (*Id.* at 263.)

Witness and victim Erick testified, without providing dates or years, that he was unloading items from a truck outside of the church when he saw Defendant and Otoniel enter the church.  (Test. of Erik, ECF No. 180 at 307-08.)  After the church doors were closed, Erick and Luis looked through a slatted window.  (*Id.* at 308-09.)  Erick testified

that he saw Otoniel inside the church with his shorts down. (*Id.* at 310.) Erick did not observe Defendant inside the church, but he testified that he left the window because he believed that Defendant was inside the church and did not want Defendant to see him at the window. (*Id.*)

The Government presented the testimony of expert Dr. Veronique Valliere, who testified, in part, that victims are often unable to recall the dates on which the abuse occurred. (Test. of Dr. Veronique Valliere, ECF No. 183 at 806-07, 815-18.) Thus, although Defendant was charged in Count One with abusing Otoniel in 2009, and Otoniel testified that Defendant abused him in 2001 and in 2004, the jury may have concluded, based upon Dr. Valliere's testimony, that Otoniel was unable to recall the specific years of the abuse. As noted above, the Court may not assess the credibility of witnesses when deciding a motion for judgment of acquittal. *Mercado*, 610 F.3d at 845; *see also United States v. Scarfo*, 711 F. Supp. 1315, 1334 (E.D. Pa. 1989) ("[A] court may not grant a motion for acquittal based on conflicting testimony, that is, testimony of a questionable quality; it is up to the jury to weigh conflicting testimony, determine credibility, and ultimately draw factual inferences."). Furthermore, importantly, Luis testified that he observed Defendant engage in illicit sexual conduct with Otoniel in 2009. If the jury found the testimony of Luis to be credible, then this testimony provided a sufficient basis upon which to find that the illicit sexual conduct element of Count One was proved beyond a reasonable doubt. Given these circumstances, and in reviewing the record in the light most favorable to the Government, the Court cannot conclude that the evidence was insufficient to uphold the jury's finding of guilty as to Count One.

ii.     **Count Two**

Count Two of the Superseding Indictment charged Defendant as follows:

> On or about September 12, 2014, in the Western District of Pennsylvania, the defendant, JOSEPH D. MAURIZIO, JR., did knowingly possess one or more visual depictions, namely, images in individual computer graphic files, the production of which involved the use of minors engaging in sexually explicit conduct, as those terms are defined in Title 18, United States Code, Section 2256, and which depict minors engaging in sexually explicit conduct, all of which had been shipped and transported using any means of interstate and foreign commerce, and all of which had been produced using materials which had been mailed and shipped and transported, by any means including by computer, in interstate and foreign commerce.
> In violation of Title 18, United States Code, Section 2252(a)(4)(B).

(ECF No. 69.)  The Government was therefore required to establish that (1) Defendant knowingly possessed one or more matters which contained a visual depiction of a minor engaging in sexually explicit conduct; (2) the visual depiction had been shipped or transported using any means of interstate or foreign commerce, or had been produced using materials which had been mailed, or shipped or transported by any means including by computer in interstate or foreign commerce; (3) the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct; (4) such visual depiction was of a minor engaging in a sexually explicit conduct; and (5) Defendant knew that such visual depiction was of sexually explicit conduct and that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.  18 U.S.C. § 2252(a)(4)(B).

Within the statute, the phrase "minor" means "any person under the age of eighteen years."  *Id.* § 2256(1).  The term "visual depiction" includes "undeveloped film

and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image." *Id.* § 2256(5). The Court instructed the jury that the phrase "shipped or transported in interstate or foreign commerce" means that "the materials used to produce the visual depiction, that is[,] the computer hard drive, had previously moved from one state to another or between another country and the United States." (ECF No. 186 at 1235.)

The term "sexually explicit conduct" means the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(B)(iii). Regarding this factor, the Court instructed the jury to consider the "overall content of the material" and further instructed the jury that it could, but was not required to, consider the following factors: (1) "[w]hether the focal point of the visual depiction is on the minor's genitals or pubic area;" (2) "whether the setting of the visual depiction is sexually suggestive, that is[,] a place generally associated with sexual activity;" (3) "whether the minor is depicted in an unnatural pose, or inappropriate attire, considering the age of the child;" (4) "whether the minor is fully or partially clothed[,] or nude;" (5) "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;" and (6) "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." (ECF No. 186 at 1234-35.)

Regarding the photographs, the Government presented Exhibits 113 and 114 as evidence. (Government Exs. 113, 114.) Exhibit 113 depicted a boy who was completely nude with his genitals or pubic area exposed. He was lying down on a mattress but was propped up on one elbow. One knee was propped up in the air, and the boy was smiling

in the direction of the person who was taking the photograph. (Government Ex. 113.) Exhibit 114 depicted the same photograph, but it was an extreme close-up of the boy with his genitals and pubic area exposed. (Government Ex. 114.)

The Court finds that the jury could have concluded that one or both of the photographs depicted sexually explicit conduct, or the lascivious exhibition of the genitals or pubic area of any person. Specifically, the jury could have concluded that the focal point of one or both of the photographs was on the boy's genitals and that the setting of one or both of the photographs was sexually suggestive because the boy was on a mattress, which is a place generally associated with sexual activity. The boy was nude, and the jury may have found that the minor was depicted in an unnatural pose, or inappropriate attire, in one or both of the photographs. Additionally, the jury may have determined that the visual depiction in one or both of the photographs, based upon the boy's positioning and facial expression, suggested sexual coyness or a willingness to engage in sexual activity and that the visual depiction in one or both of the photographs was intended or designed to elicit a sexual response in the viewer. Given that the jury, in considering the above factors, could have concluded that one or both of the photographs depicted sexually explicit conduct, it also could have reasonably determined that Defendant knew that the visual depiction in one or both of the photographs was of sexually explicit conduct.

The Court also finds that the jury could have concluded that the boy depicted in Exhibits 113 and 114 was a minor. The Government can prove the age of an individual in a photograph in the following ways:

> First, the individual himself, or someone who has knowledge of his age, can testify as to the individual's age at the time the photograph was taken. Second, an expert, such as a pediatrician, can analyze the photograph and give an expert opinion as to the age of the individual. . . . Third, the jury can examine the photographs in question and determine for itself whether the individual is under eighteen years of age.

*United States v. Villard*, 700 F. Supp. 803, 814 (D.N.J. 1988) (explaining that "[i]n this case, a lay witness who had seen the photographs gave his opinion of the individual's approximate age"). Here, the Government presented the testimony of Homeland Security Investigations special agent Molly Rock, who stated that the boy appeared to be prepubescent and was possibly around the age of ten or eleven. (Test. of Molly Rock, ECF No. 180 at 165-66.) Moreover, the Court finds that the jury, which examined Exhibits 113 and 114, could have reasonably determined that the boy depicted in the photographs was under the age of eighteen. The jury also could have reasonably concluded that Defendant knew that the boy engaged in sexually explicit conduct in one or both of the photographs was a minor.

Next, the Court concludes that the jury could have determined that Defendant knowingly possessed the matters that contained a visual depiction of a minor engaging in sexually explicit conduct. Specifically, the Government presented the testimony of Homeland Security Investigations special agent Robert Connelly, who specializes in computer forensics and examined Defendant's desktop computer. (Test. of Robert Connelly, ECF No. 181 at 369, 373-74.) Agent Connelly testified that the EXIF data of Exhibits 113 and 114, which were found in the recycling bin on the Western digital hard drive, (Government Ex. 34), revealed that the photographs were taken on an Olympus

digital camera, model number X-3C-60Z, (Government Ex. 192). (Test. of Connelly, ECF No. 181 at 374-75, 380-81, 385-86, 402-03.) Agent Connelly stated that he located a photograph that depicted Defendant taking a photograph of his reflection in a mirror. (*Id.* at 389; Government Ex. 193a.) The EXIF data for this photograph revealed that it was taken on an Olympus digital camera, model number X-3C-60Z. (Test. of Connelly, ECF No. 181 at 389-90; Government Ex. 193b.) Agent Connelly also testified that he located a photograph of an individual holding a pole, (Government Ex. 194a), followed by three photographs of Defendant, (Government Exs. 194b-194d). (Test. of Connelly, ECF No. 181 at 390-91.) The EXIF data for all four photographs indicated that they were taken on an Olympus digital camera, model number X-3C-60Z. (*Id.* at 391-92; Government Ex. 194e.) Accordingly, there was not insufficient evidence for the jury to conclude that Defendant took the photographs depicted in Exhibits 113 and 114.

Moreover, Agent Connelly testified that the images depicted on Exhibits 113 and 114, which were taken on an Olympus digital camera, model number X-3C-60Z, were later uploaded to a computer to which Defendant had access. (Test. of Connelly, ECF No. 181 at 382-83, 385-86, 412-13.) Agent Connelly stated that eight individuals, including Defendant, had administrator accounts on the computer located in the rectory. (*Id.* at 382-83, 400; Government Ex. 190.) An administrator could add user accounts, delete user accounts, change passwords, move passwords, and install programs on to the computer. (Test. of Connelly, ECF No. 181 at 383.) Agent Connelly testified that Exhibits 113 and 114 were deleted on June 5, 2007, and were found in the recycling bin connected to Marie Pollack's account. (*Id.* at 380-82, 402-03, 407-08; *see also* Government Ex. 187.) Agent

14

Connelly testified that Ms. Pollack's password was last changed on January 23, 2007, at 9:30 p.m. (Test. of Connelly, ECF No. 181 at 384-85; Government Ex. 191.) That same day, the password to the account of an administrator named Brian was changed at 9:40 p.m. (Test. of Connelly, ECF No. 181 at 385; Government Ex. 191.)

The Government presented the testimony of Marie Pollack, who volunteered at the parish from 2006 until 2013. (Test. of Marie Pollack, ECF No. 182 at 585.) Ms. Pollack stated that she occasionally transferred photographs from Defendant's camera on to the computer. (Id. at 585-87.) She also testified that Defendant instructed her to never delete photographs. (Id. at 587.) Ms. Pollack testified that she never saw photographs of naked children and that she did not remember if she had a user profile on the computer. (Id. at 587-88.) Ms. Pollack stated that she volunteered at the parish two to three times per week, but she could not recall ever working as late as 9:30 p.m. in the evenings. (Id. at 585, 588.)

Although there were several administrators who had access to the computer, the Government "was not required to prove that defendant had exclusive or sole access to the computers that contained the child pornography images." *United States v. Pavulak*, No. 09-CR-043, 2011 U.S. Dist. LEXIS 103699, at *17 (D. Del. Sept. 13, 2011). Moreover, given the evidence described above, there was not insufficient evidence for the jury to conclude that Defendant took one or both of the images depicted in Exhibits 113 and 114 on an Olympus digital camera, model number X-3C-60Z and/or possessed one or both of the images depicted in Exhibits 113 and 114 on the computer to which he had access.

The jury also could have concluded that one or both of the photographs had been shipped or transported using any means of interstate or foreign commerce, or had been

produced using materials which had been mailed, or shipped or transported by any means including by computer in interstate or foreign commerce. Exhibit 34 was a Western digital hard drive that was stamped as a "product of Thailand." (Government Ex. 34; *see also* Test. of Connelly, ECF No. 181 at 374-75.) As the Court instructed the jury, the phrase "shipped or transported in interstate or foreign commerce" means that "the materials used to produce the visual depiction, that is[,] the computer hard drive, had previously moved from one state to another or between another country and the United States." (ECF No. 186 at 1235.) The jury therefore could have determined that the hard drive was moved between Thailand and the United States.

Considering this evidence in the light most favorable to the Government, and considering that the Court may not assess the credibility of witnesses when deciding a motion for judgment of acquittal, *Mercado*, 610 F.3d at 845, the Court finds that sufficient evidence was presented upon which the jury could have found Defendant guilty beyond a reasonable doubt as to Count Two.

### iii.    Count Three

Count Three of the Superseding Indictment charged Defendant as follows:

> Between on or about February 26, 2009, and March 13, 2009, the defendant, JOSEPH D. MAURIZIO, JR., a citizen of the United States, who was arrested in the Western District of Pennsylvania, did knowingly travel in foreign commerce, from the United States to Honduras, and engage and attempt to engage in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f)(1) and (2), with Minor #2, a boy who was under 18 years of age at the time that defendant JOSEPH D. MAURIZIO, JR. engaged in illicit sexual conduct with him.
> In violation of Title 18, United States Code, Section 2423(c).

(ECF No. 69.) The Government was therefore required to establish that (1) Defendant traveled in foreign commerce or resided, either temporarily or permanently, in Honduras, and (2) Defendant engaged in or attempted to engage in any illicit sexual conduct with Minor #2, who was under the age of eighteen at the time and who is known as Erick. 18 U.S.C. § 2423(c).

After examining the evidence that was presented during the Government's case-in-chief, the Court finds that the evidence was not insufficient to sustain a conviction as to Count Three of the Superseding Indictment. First, the Court notes that the Government and Defendant stipulated that Defendant traveled in foreign commerce from the United States to Honduras between February 26, 2009, and March 13, 2009. (Government Ex. 236.) The Government and Defendant also stipulated that Erick, who was born on May 23, 1993, was fifteen years old during the timeframe of February 26, 2009, and March 13, 2009. (Government Ex. 237.) Accordingly, the elements of the offense that Defendant traveled in foreign commerce or resided, either temporarily or permanently, in a foreign country, and that the victim was under the age of eighteen during the relevant timeframe were sufficient to reach the jury based upon the parties' stipulations. 18 U.S.C. § 2423(c).

Next, regarding the illicit sexual conduct, Erick testified, without providing dates or years, that Defendant asked him, Luis, and another boy named Martin to move some items that were in Defendant's Ford Ranger truck. (Test. of Erik, ECF No. 180 at 299-300.) Erick stated that during the drive from La Esperanza to Latchi Lara, he sat in the front passenger seat, Defendant sat in the driver's seat, and Luis and Martin sat in the back and the middle of the truck. (Id. at 301.) When Defendant, Erick, Luis, and Martin arrived at

Latchi Lara, they began to unload Defendant's truck and placed items that belonged to Defendant inside a container. (*Id.* at 301-02.) Erick testified that, at one point, he was inside the container alone and was unloading items when Defendant touched him. (*Id.* at 301-03.) Specifically, Erick stated that Defendant touched his penis with his hand for ten to fifteen seconds while they were inside the container. (*Id.* at 303.) Defendant then gave Erick 200 lempiras.[2] (*Id.*) Defendant and Erick then left the container and finished unloading Defendant's belongings from the truck, which took approximately a half hour. (*Id.* at 304.)

Erick testified that after unloading Defendant's belongings, Defendant drove him back to La Montana in his Ford Ranger truck, while Luis and Martin returned to La Montana in a truck that belonged to Latchi Lara. (*Id.* at 304-06.) Erick stated that Defendant touched his penis with his hand for approximately ten seconds while they were inside the truck. (*Id.* at 306-07.) Erick also stated that Defendant asked him to masturbate himself and asked him how much Erick would charge. (*Id.* at 307.) Erick did not give Defendant a price, and he did not agree to masturbate in front of Defendant. (*Id.*) Erick testified that Defendant gave him 300 lempiras while they were inside the truck. (*Id.*)

Witness Luis testified that in 2009, he, Defendant, Erick, and Martin went to Latchi Lara to unload items. (Test. of Luis, ECF No. 180 at 246-47.) Defendant drove his Ford Ranger, and Erick sat in the front passenger seat. (*Id.* at 248.) Luis stated that he was sitting in the middle of the backseat, and Martin was in the back cab, or bed, which was outside of the truck. (*Id.* at 248-49, 272.) Luis stated that Defendant asked Erick if Luis

---

[2] The lempira is the official currency of Honduras.

could be trusted, by using some words and hand signals, while they were driving to Latchi Lara. (*Id.* at 249-50.) After Erick indicated that Luis could be trusted, Defendant, who was drinking coffee, took Erick's hand and put it on the steering wheel. (*Id.* at 250.) Luis testified that Defendant then unbuttoned Erick's pants, put his hand inside Erick's pants, and touched Erick's penis. (*Id.*) Luis stated that Defendant asked Erick how much Erick would charge him to touch his penis, and Erick said that he charged 100 lempiras. (*Id.*) Luis observed Defendant give Erick 100 lempiras. (*Id.* at 251.) Luis testified that, during this trip to Latchi Lara, Defendant touched Erick again on top of Erick's pants. (*Id.*) Luis stated that Defendant did not ask for permission to touch Erick the second time because he had already asked Erick how much he charged. (*Id.* at 251-52.) Luis testified that on both occasions when he observed Defendant touch Erick, he saw Defendant give Erick money. (*Id.* at 252.) Luis stated that after they unloaded Defendant's belongings into the container, Defendant and Erick returned to La Montana in Defendant's Ford Ranger truck, while he, Martin, and a truck driver returned to La Montana in another truck. (*Id.* at 253, 270, 274.)

As previously discussed, Dr. Valliere testified, in part, that victims are often unable to recall the dates on which the abuse occurred and often are unable to recall the sequencing of events surrounding the abuse. (Test. of Dr. Veronique Valliere, ECF No. 183 at 806-07, 815-18.) Thus, although Erick's and Luis's testimony conflicted as to when the abuse in Defendant's truck occurred, the jury may have concluded, based upon Dr. Valliere's testimony, that Erick was unable to recall certain specific details of the abuse. As noted above, the Court may not assess the credibility of witnesses when deciding a

motion for judgment of acquittal. *Mercado*, 610 F.3d at 845; *see also Scarfo*, 711 F. Supp. at 1334. Given these circumstances, and in reviewing the record in the light most favorable to the Government, the Court cannot conclude that the evidence was insufficient to uphold the jury's decision that Defendant is guilty beyond a reasonable doubt as to Count Three.

### iv.    Count Four

Count Four of the Superseding Indictment charged Defendant as follows:

> Between on or about March 5, 2004, and March 11, 2007, the defendant, JOSEPH D. MAURIZIO, JR., a citizen of the United States, who was arrested in the Western District of Pennsylvania, did knowingly travel in foreign commerce, from the United States to Honduras, and engage and attempt to engage in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f)(1) and (2), with Minor #3, a boy who was under 18 years of age at the time that defendant JOSEPH D. MAURIZIO, JR. engaged in illicit sexual conduct with him.
> In violation of Title 18, United States Code, Section 2423(c).

(ECF No. 69.) The Government was therefore required to establish that (1) Defendant traveled in foreign commerce or resided, either temporarily or permanently, in Honduras, and (2) Defendant engaged in or attempted to engage in any illicit sexual conduct with Minor #3, who was under the age of eighteen at the time and who is known as Ludin. 18 U.S.C. § 2423(c).

After examining the evidence that was presented during the Government's case-in-chief, the Court finds that the evidence was insufficient to sustain a conviction as to Count Four of the Superseding Indictment. First, the Court notes that the Government and Defendant stipulated that Defendant traveled in foreign commerce from the United States to Honduras between March 5, 2004, and March 11, 2007. (Government Ex. 236.) The

Government and Defendant also stipulated that Ludin, who was born on March 12, 1991, was between the ages of twelve years old and fifteen years old during the timeframe of March 5, 2004, and March 11, 2007. (Government Ex. 237.) Accordingly, the elements of the offense that Defendant traveled in foreign commerce or resided, either temporarily or permanently, in a foreign country, and that the victim was under the age of eighteen during the relevant timeframe were sufficient to reach the jury based upon the parties' stipulations. 18 U.S.C. § 2423(c).

Next, regarding the illicit sexual conduct, Ludin denied that Defendant engaged in any illicit sexual conduct with him. He also recanted all allegations he previously made against Defendant. (*See* Test. of Ludin, ECF No. 182.) Regarding Ludin's previous statements he made during an interview in 2014, in which Ludin alleged that Defendant engaged in illicit sexual conduct with him, the Court held that the statements were admissible as prior inconsistent statements but were not admissible as substantive evidence. (ECF No. 147 at 10-16.) During the trial, the Court instructed the jury that Ludin's prior inconsistent statements could not be used as proof of the truth of what he said in these earlier statements; rather, Ludin's prior inconsistent statements could only be used to evaluate his trial testimony and credibility. (*Id.* at 641-42.) Accordingly, the Government presented no evidence through Ludin that Defendant engaged in illicit sexual conduct with Ludin during the timeframe of March 5, 2004, and March 11, 2007.

The Government presented no evidence through its other witnesses that Defendant engaged in illicit sexual conduct with Ludin during the timeframe of March 5, 2004, and March 11, 2007. Specifically, Otoniel testified that he witnessed Defendant and

Ludin doing "things that were not good," or "mischief." (Test. of Otoniel, ECF No. 182 at 693-94.) When asked to elaborate, Otoniel stated that "Ludin would screw him, and he would screw Ludin." (*Id.* at 694.) Otoniel did not provide any timeframe as to when he witnessed these events. (*See id.*) Similarly, Erick testified that he saw Defendant and Ludin together several times and described Ludin as Defendant's "favorite." (Test. of Erick, ECF No. 180 at 310-11.) Erick stated that he witnessed Defendant taking photographs of Ludin but provided no other details. (*Id.* at 311.) Erick did not testify that he observed Defendant engage in any illicit sexual conduct with Ludin. (*See id.* at 310-11.)

Witness Luis testified that on the same day in 2009 on which he observed Defendant touch Erick inside the truck and witnessed Otoniel penetrating Defendant with his penis inside the church, he also saw Ludin penetrating Defendant. (Test. of Luis, ECF No. 180 at 263-66, 270-71, 277-78.) Specifically, Luis stated that after he observed Otoniel and Defendant inside the church, he continued to unload the truck. (*Id.* at 264.) After the truck was unloaded, Luis and three others —Juan, Luis, and Pedro Pena — took donation items from the church to an administrative building. (*Id.* at 264-65.) When they were traveling between the church and the administrative building, Luis was sitting in the bed of the truck and saw Defendant and Ludin behind the classrooms at La Montana. (*Id.* at 265-67.) Luis testified that Defendant was in front of Ludin, and Ludin was penetrating Defendant. (*Id.* at 267-68.) Ludin's pants and Defendant's pants were down to their knees, and Defendant's hands were placed on a wall. (*Id.* at 267.) Ludin's hands were placed on Defendant's face. (*Id.*) Luis testified that Ludin penetrated Defendant for approximately five minutes. (*Id.* at 268.) Luis did not testify that he observed Defendant

engage in any illicit sexual conduct with Ludin between the timeframe of March 5, 2004, and March 11, 2007.  (*See* Test. of Luis, ECF No. 180.)

The Government did not present any evidence that Defendant engaged in illicit sexual conduct with Ludin between the timeframe of March 5, 2004, and March 11, 2007. Although Luis testified that he observed Defendant engage in illicit sexual conduct with Ludin, the time period was in 2009.  The Government charged Defendant with engaging and attempting to engage in illicit sexual conduct with Ludin between on or about March 3, 2008, and March 14, 2008, in Count Five of the Superseding Indictment (ECF No. 69), and the jury found Defendant not guilty of Count Five, (ECF No. 163).  Because the Government failed to present any evidence that Defendant engaged in illicit sexual conduct with Ludin between the timeframe of March 5, 2004, and March 11, 2007, the Court cannot conclude that the evidence was sufficient to uphold the jury's decision that Defendant is guilty beyond a reasonable doubt as to Count Four.

> ### v.     Count Eight

Count Eight of the Superseding Indictment charged Defendant as follows:

> Between on or about December 18, 2008, and March 13, 2009, in the Western District of Pennsylvania, the defendant, JOSEPH D. MAURIZIO, JR., did knowingly transport, transmit, or transfer, or cause to be transported, transmitted, or transferred, a monetary instrument or funds, to wit, Check #221 issued to ProNino USA for $3,000.00, from a place in the United States, to wit, the Western District of Pennsylvania, to a place outside of the United States, to wit, Honduras, with the intent to promote the carrying on of the specified unlawful activity, that is, engaging in illicit sexual conduct in foreign places in violation of Title 18, United States Code, Section 2423(c).
>
> In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

(ECF No. 69.) The Government was therefore required to establish that (1) Defendant knowingly transported, transmitted, or transferred, or caused to be transported, transmitted or transferred, a monetary instrument or funds from a place in the United States to or through a place outside of the United States; and (2) Defendant acted with the intent to promote the carrying on of a specified unlawful activity, that is engaging in illicit sexual conduct in foreign places. 18 U.S.C. § 1956(a)(2)(A).

The Government provided evidence of Check #221, which was dated December 18, 2008, and was to be paid to the order of ProNiño USA in the amount of $3,000. (Government Exs. 167, 167A.) The memo line of the check stated that it was for the March 2009 mission trip. (*Id.*) The Government also presented evidence of an e-mail, dated February 20, 2009, in which Defendant stated that "two months ago I sent Tim[] $3,000 for the start of our expenses." (Government Ex. 183.) Defendant also stated, "I will need $1,000 in [lempiras] when I arrive, $1,000 early next week and the final $ at the end of that week." (*Id.*) The Government presented evidence of another e-mail, dated May 8, 2009, that detailed Defendant's personal expenses during the March 2009 mission trip. (Government Ex. 184.) The Government also presented the testimony of Kevin Petrulak, a special agent with the Internal Revenue Service Criminal Investigation, who provided his interpretation of the Government's exhibits. (Test. of Petrulak, ECF No. 181 at 479, 528-32.) He confirmed that Defendant's personal expenses for the March 2009 mission trip totaled $3,000. (*Id.* at 530-32.)

As discussed above, Luis testified that after he observed Otoniel penetrating Defendant inside the church in 2009, he saw Defendant give Otoniel chocolates and

money, which Otoniel was carrying when he exited the church.  *See supra* Part III.A.i.

Erick testified that Defendant gave him 200 lempiras after Defendant touched his penis

while they were unloading items inside the container in 2009.  Erick also testified that

Defendant gave him 300 lempiras after Defendant touched his penis while they were

inside the truck in 2009.  Luis testified that he observed Defendant give Erick 100 lempiras

after Defendant touched Erick's penis while they were inside the truck in 2009.  *See supra*

Part III.A.iii.  Fredis testified that in 2008 or 2009, Defendant asked him to undress and to

masturbate.  (Test. of Fredis, ECF No. 182 at 707-08.)  After Defendant asked Fredis how

much he would charge, he entered the number 200 on his calculator and handed it to

Fredis.  (*Id.* at 708-09.)  Fredis declined Defendant's offer and handed the calculator back

to him.  (*Id.* at 709.)  As noted above, the Court may not assess the credibility of witnesses

when deciding a motion for judgment of acquittal.  *Mercado*, 610 F.3d at 845.  Given these

circumstances, and in reviewing the record in the light most favorable to the Government,

the Court cannot conclude that the evidence was insufficient to uphold the jury's decision

that Defendant is guilty beyond a reasonable doubt as to Count Eight.

>    **B.**     **Motion for Judgment of Acquittal Made after the Delivery of the Verdict**

Defendant made a second motion for judgment of acquittal on September 22, 2015,

after the verdict was delivered.  Accordingly, in deciding this motion, the Court may

consider the evidence that Defendant presented during his case-in-chief.  However, the

Court concludes that the evidence that Defendant presented during his case-in-chief does

not change the Court's analysis of the motion for judgment of acquittal that Defendant

made after the Government presented its case in chief in that the jury may have found the

Government's witnesses to be credible and based its verdict on that evidence. The Court therefore relies upon its above analysis and will grant in part and deny in part Defendant's motion for judgment of acquittal.

**IV.    Conclusion**

For the foregoing reasons, Defendant's motions for judgment of acquittal are granted in part and denied in part. Defendant's motions for judgment of acquittal as to Count Four are granted. Defendant's motions for judgment of acquittal are denied in all other respects.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 3:14-23 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| JOSEPH D. MAURIZIO, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 30th day of November, 2015, upon consideration of Defendant's

oral Motions for Judgment of Acquittal, which he made at the close of the Government's

case-in-chief on September 16, 2015, and on September 22, 2015, after the verdict was

delivered, **IT IS HEREBY ORDERED** that Defendant's motions are **GRANTED in part**

**and DENIED in part.** Defendant's motions for judgment of acquittal as to Count Four are

**GRANTED**, and a judgment of acquittal is entered as to Count Four. Defendant's

motions for judgment of acquittal as to Counts One, Two, Three, and Eight are **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE